IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JONATHAN MORGAN,

        Plaintiff,            1: 05 CV 620 LJO WMW PC

   vs.                     FINDINGS AND RECOMMENDATION
                           RE MOTION TO DISMISS (DOC 29)

CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION,

        Defendant.

      Plaintiff is a former state prisoner proceeding pro se in a civil action against Defendant California Department of Corrections and Rehabilitation on claims under the Americans With Disabilities Act (ADA0, 42 U.S.C. § 12101 *et seq*,. and the Eighth and Fourteenth Amendments.

      Plaintiff's ADA claim stems from his eventual placement in a single bunk cell in the Security Housing Unit (SHU), rather than in a cell modified for ADA compliance.  Defendant moves to dismiss on the ground that the facts alleged do not state a claim for an ADA violation. Specifically, Defendant argues that the facts alleged in the complaint indicate that the decision to place Plaintiff in the SHU was based upon his refusal to accept housing in a cell with a modified bunk.  Plaintiff is a paraplegic confined to a wheelchair.

      This action proceeds on the October 2, 2007, first amended complaint.  Plaintiff alleges

that in 1998, he arrived at the California Medical Facility (CMF), and was housed in an ADA accessible single bunk cell. (Am. Compl. ¶ 1.) On October 16, 2000, Plaintiff was transferred to a double bunk cell, but because of its lack of accessibility, Plaintiff was returned to a single bunk cell. Id.,¶ 2. On October 10, 2001, Plaintiff was moved to Administrative Segregation (AdSeg) housing. In paragraph 3 of the amended complaint, Plaintiff refers the court to his Exhibits 3 and 4 to the amended complaint. Exhibit 3 is a medical chrono, dated October 10, 2001, signed by the Chief Medical Officer, indicating that Plaintiff is medically cleared to be re-located to Ad-Seg housing, and this his cell "should be wheelchair accessible." Exhibit 4 is a copy of a medical report, indicating that Plaintiff injured his neck in the cell, and recommended that Plaintiff be placed in a single bunk cell. Plaintiff filed an inmate grievance, seeking placement in a single bunk cell.

Plaintiff's Exhibit 7 is the Second Level Appeal Response to his grievance. Exhibit 7 indicates that Plaintiff was placed in AdSeg on October 10, 2001, "for 'Failure to Obey an Order', when he refused a medical and custodial routine Unit IV housing change." Exhibit 7 also noted the following:

> Appellant's present location in Ad. Seg. Is also an approved ADA cell, which is equipped with grab bars and the distance from the top bunk to the bottom bunk is accessible for him to sleep in the bed, however, he has chosen to sleep on the floor. On the CDC-7219, the physician's recommendation is noted, however, the bed is a double bunk bed style and does not preclude your access for sleep. It is not penologically in the interest of the institution to remove the upper bunk bed

Exh. 7 to Am. Compl.[1]

On November 15, 2001, Plaintiff filed a CDC Form 1824, a Request for Reasonable

---

[1] Exhibits attached to the complaint are considered part of the complaint and may be examined without transforming a 12(c) or 12(b)(6) motion into a summary judgment motion. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 (9th Cir. 1990).

Modification. Exhibit 11 is the Form 1824. It also notes that Plaintiff was medically cleared for AdSeg housing. Specifically, it notes that Plaintiff was "appropriately accommodated." Plaintiff was specifically advised that, regarding the move to Y-Dorm, or AdSeg,, "Staff made the appropriate effort to provide you with reasonable accommodations, including a wheelchair accessible dorm & a lower bunk that would have allowed you access to mainline services, activities, & programs. However, you have chosen to refuse a bed move." The Ad.Seg. Unit & cell you are currently in is also wheelchair accessible."

Page 2 of Plaintiff's Exhibit 11 indicates that Plaintiff continued to refuse to move into the Y-Dorm even though prison officials retrofitted the cell to make it ADA compliant and housed other wheelchair dependent inmates there. Plaintiff also refused to cut his hair. Plaintiff is noted as "a management problem" due to his continued refusal to move to Y-Dorm and cut his hair. For these reasons, Plaintiff was transferred to the SHU at CSP Corcoran.

In February of 2003, Plaintiff was evaluated by Dr. Kim and Dr. Bhatt, and it noted that the existing double bunk cells were inadequate for Plaintiff's height. (Am. Compl. ¶ 10.) Plaintiff's Exhibit 20 is a letter from Deputy Attorney General Spencer Lee Walker to the Court Administrator for the Fifth District Court of Appeal. The letter references a petition Plaintiff filed regarding disabled access. The letter, dated April 24, 2003, notes that "Plant Operations at CMF modified a bunk in the Y-Dorm to provide petitioner with 57 inches clearance between the top of the lower mattresses and bottom of the upper frame."

Plaintiff continued to refuse the housing. Plaintiff alleges that the modified bunk was unacceptable. (Am. Compl. ¶ 12). Plaintiff refers to Exhibit 20, but nothing in Exhibit 20 indicates that the bunk was unacceptable. Plaintiff was eventually transferred back to Corcoran SHU because of his refusal to accept the modified double bunk cell. Exhibit 21. Plaintiff remained at Corcoran until his release in June of 2004.

Title II of the Americans with Disabilities Act (ADA) "prohibit[s] discrimination on the

basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052.

Defendant argues that, taking the facts of the complaint as true, Plaintiff has not established that the decision to house him in Corcoran SHU was based upon his disability. Plaintiff's own exhibits indicate that the CDCR made numerous attempts at accommodating Plaintiff, but Plaintiff continued to refuse double bunk housing. As noted above, in order to prevail, Plaintiff must allege facts, taken as true, that indicate that he was excluded from participation or otherwise discriminated against by reason of his disability. In this case, Plaintiff must allege facts indicating that the decision to transfer him to Corcoran SHU was because he was disabled. Defendant correctly argues that "[A] plaintiff proceeding under Title II of the ADA must prove . . . that the exclusion from participation in the program was solely by reason of disability." Weinreich v. Los Angeles County Metropolitan Transporation Authority, 114 F.3d 976, 978-979 (9th Cir. 1997)(quoting Does 1-5 v. Chandler, 83 F.3d 1150, 1155 (9th Cir. 1996), (internal citations omitted).

Plaintiff's own exhibits undermine his claim. Plaintiff's initial placement in AdSeg on October of 2001 was based upon Plaintiff's behavior, not his disability. In his opposition (p. 4,

1  line 6-9), Plaintiff argues that the punishment for the grooming violation should have been
2  reduced to an administrative appeal, Plaintiff specifically alleges that the 128G chrono was
3  falsified.  Plaintiff argues that he only received 1 Rules Violation Report for a grooming standard
4  violation, and that inmates must acquire 3 Rules Violation Reports before punishment.   Plaintiff
5  refers to Title 15 of the California Administrative Code, Section 3062(n).  There is no such
6  section .  Section 3062(m) provides that "an inmate who fails to comply with these grooming
7  standards may be deemed a program failure, pursuant to Section 3062, subject to progressive
8  discipline and classification committee review for appropriate housing and program placement."
9  A challenge to the validity of the disciplinary process is beyond the scope of this litigation.
10 Plaintiff does not dispute that he was not compliant with grooming policy.  That, in Plaintiff's
11 view, he was inappropriately punished, does not establish that he was placed in disciplinary
12 housing solely on the basis of his disability.

13      Plaintiff's Exhibits 7, 11, 20 and 23 establish that on multiple occasions, CMF staff
14 retrofitted the Y-Dorm cell for Plaintiff to make it wheelchair accessible and provide sufficient
15 clearance between the bunks to allow for Plaintiff's height.  There are no facts alleged to support
16 Plaintiff's subjective impression that he was sent to Corcoran SHU solely on the basis of his
17 disability.  There is no dispute that Plaintiff violated the rules.  There is no dispute that the cells
18 were modified.  There is no dispute that Plaintiff refused housing in a double bunk cell.  That
19 Plaintiff believes the only appropriate housing was a single bunk cell does not subject Defendant
20 to liability.  There are no facts alleged which, if taken as true, establish that Plaintiff was
21 discriminated against solely on the basis of his disability.   Plaintiff's ADA claim should
22 therefore be dismissed.[2]

---

[2] In the amended complaint, Plaintiff refers to Armstrong v. Wilson, 124 F.3d 1019 (9th Cir. 1997). Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.  In order to state a claim under the ADA, plaintiff must have

1    Plaintiff also claims that he was retaliated against because of his disability.  42 U.S.C. §
2 12203(a) prohibits retaliation because that person "(1) has opposed any practice violating the
3 ADA, or (2) because that person 'made a charge, testified, assisted, or participated in any manner
4 in an investigation, proceeding, or hearing under this Act.."  Defendant correctly argues that
5 Plaintiff has not alleged any facts showing that CDCR retaliated against him in violation of the
6 ADA.  As noted above, the Amended Complaint is replete with exhibits indicating that the
7 CDCR's actions were based upon Plaintiff's refusal to abide by grooming standards, and refusal
8 to accept housing that was modified to be ADA accessible.  In addition, Plaintiff's Exhibit 2 is a
9 letter from the CDCR's Institutional Standards and Operations Section encouraging Plaintiff to
10 seek court action after he exhausted his administrative remedies.  Plaintiff can not therefore
11 maintain a retaliation claim.

12    Plaintiff also claims that the CDCR violated his Eighth and Fourteenth Amendment right
13 to be free from cruel and unusual punishment.  Defendant correctly argues that the constitutional
14 claims against the CDCR should be dismissed on the ground that the CDCR, as a state agency, is
15 immune under the Eleventh Amendment.  Will v. Michigan Dept. of State Police, 491 U.S. 58,
16 66 (1989).  Plaintiff may, however, maintain an ADA claim, but, as noted above, Plaintiff fails to
17 state such a claim.

18    Further, Plaintiff has not alleged any facts that satisfy the constitutional standard.  "The
19 Eighth Amendment requires that prison officials provide inmates with such minimum essentials

---

been "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap."  Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997).  Assuming that plaintiff can show that he has a disability within the meaning of the ADA, plaintiff has alleged no such exclusion or denial.  In the event that plaintiff is attempting to pursue a claim for relief for violation of the ADA, he may amend his complaint.

To the extent that plaintiff wishes to seek assistance that he believes is due pursuant to the Armstrong Remedial Plan, plaintiff "must pursue his request via the consent decree or through class counsel."  Crayton v. Terhune, No. C 98-4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002).  Plaintiff may not sue for damages in this action solely on the basis that defendants allegedly violated the Armstrong Remedial Plan

as adequate food, shelter, clothing, medical care, and safety." Madrid v. Gomez, 889 F. Supp. 1146, 1245 (N.D. Cal. 1995). Defendant notes that Plaintiff does not make any claim that he is being, or has been, denied any of these items. His claim of denial of outdoor exercise (less than ten hours per month) does not amount to a constitutional deprivation. See Allenv. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994). (forty-five minutes of exercise per week for six weeks); see also Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000)(no exercise tome for a six and one-half week period). Further, Defendant notes that no court has recognized the other conditions alleged by Plaintiff - denial of an eggcrate mattress, use of a fingerstick lancet for diabetic testing, and placement in the CSP-Corcoran's Mental Health Services Delivery System - as sufficient for an Eighth Amendment violation. The facts of the Amended Complaint show that his SHU conditions were comparable to what he received in general population. ¶ 10. There are no facts alleged which, if taken as true, indicate that Plaintiff was denied any of life's necessities. The Eighth Amendment claim should therefore be dismissed.

Plaintiff's Due Process claim regarding his ICC hearing in May of 2002 regarding his SHU placement also fails. Defendant correctly notes that Plaintiff's Exhibit 11 establishes that Plaintiff received also the process due him. Hewitt v. Helms, 459 U.S. 460, 476 (1983).

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss be granted, and this action be dismissed for failure to state a claim upon which relief could be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 18, 2008**              /s/  William M. Wunderlich
                                         UNITED STATES MAGISTRATE JUDGE